## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF PENNSYLVANIA

---

STEWART ABRAMSON, individually and on behalf of a class of all persons and entities similarly situated,

               Plaintiff

vs.

NORTH STAR INSURANCE ADVISORS LLC

               Defendant.

Case No.  2:22-cv-827

COMPLAINT-CLASS ACTION

---

## CLASS ACTION COMPLAINT

### Preliminary Statement

1.      As the Supreme Court explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.      Plaintiff Stewart Abramson ("Plaintiff") brings this action under the TCPA alleging North Star Insurance Advisors LLC ("North Star Insurance"), sent him and other putative class members pre-recorded telemarketing calls for purposes of promoting their goods and services without their prior express written consent.

3.      Because the calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing call.

4.      A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5.      Plaintiff Stewart Abramson is a Pennsylvania resident in this District.

6.      Defendant North Star Insurance Advisors is a Missouri registered company headquartered in Wentzville, Missouri.

## Jurisdiction & Venue

7.      The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

8.      The Defendant is subject to personal jurisdiction as it (a) made calls into this District and (b) does business in this District.

9.      Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls to the Plaintiff were sent into this District.

## The Telephone Consumer Protection Act

10.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls

11.    The TCPA makes it unlawful to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an artificial or prerecorded voice to any residential telephone number.  *See* 47 U.S.C. § 227(b)(1)(B).

12.    The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A) or 47 U.S.C. § 227(b)(1)(B).  *See* 47 U.S.C. § 227(b)(3).

13.    According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14.    In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

15.    *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

**Factual Allegations**

16.    North Star Insurance provides insurance services to consumers.

3

17.     North Star Insurance uses telemarketing to promote its products and solicit new clients.

18.     These telemarketing efforts include the use of automated calls to send prerecorded messages.

19.     A former employee of the Defendant posted a review of their experience while working for the Defendant, stating that their job entailed "Constantly harassing people about 'senior benefits.'"[1]

### Worst job I ever had

Pre qualifier (Former Employee) - Wentzville, MO - February 24, 2019

Quite terrible actually. A good call center though, not the best one but no shabby. Music was loud, like calling people in a nightclub. Constantly harassing people about "senior benefits."

[2]

20.     Other former employees of the Defendant have also made complaints online about the cold calls that they were required to make on behalf of the Defendant, for instance:

### Cold calls!

Insurance Sales Agent (Former Employee) - Wentzville, MO - March 23, 2020

This company sounds great, and so does the pay, but just so you know, you will be making all cold calls and have an unreasonable sales goal. You are forced to push and push the customer. I had to keep someone on the phone that said she was driving her grandkids and couldn't safely talk right now.

[3]

---

[1] https://www.indeed.com/cmp/North-Star-Insurance-Advisors,-LLC/reviews?fcountry=ALL&start=20
[2] https://www.indeed.com/cmp/North-Star-Insurance-Advisors,-LLC/reviews?fcountry=ALL&start=20
[3] https://www.indeed.com/cmp/North-Star-Insurance-Advisors,-LLC/reviews?fcountry=ALL

**I Wouldn't Do It If I Were You**

Feb 9, 2021 - Insurance Agent in Wentzville, MO

✖ Recommend   ✔ CEO Approval   ✖ Business Outlook

**Pros**

Great training program, no glass ceiling (you work hard, it pays off.

**Cons**

You have to filter through a lot of calls to get sales, many people you speak with half the time aren't interested or don't qualify. $500 due monthly to work for them. No other benefits.[4]

21.     Multiple consumers have posted complaints online about receiving unwanted pre-recorded telemarketing calls from Defendant North Star, including:

- "Called in the early evening.  Caller ID listed "Carolina Bch, NC."  Left part of a robo message asking the listener to listen to a 3-minute pre-recorded message. . . . Another website has identified the number with a senior scam!"[5]
- "Claims to be 'Senior Benefits,' a known scam preying on 'Seniors.'  Give them NO personal information.  They are just thieves."[6]
- "They have called everyday now for a month now. I know it is some kind of scam and I don't know how to stop them from calling"[7]
- "'SENIOR BENEFITS' SCAM. Sick of these CRIMINALS PREYING ON THE ELDERLY and INNOCENT!"[8]
- "I press option #2 to remove me, but they still continue to call me."[9]
- "Called me a few times."[10]
- "I press 2 but Senior Benefits just keeps on calling. These guys need to be stopped!"[11]

22.     The Plaintiff received such calls.

---

[4] https://www.glassdoor.com/Reviews/North-Star-Insurance-Advisors-Reviews-E1053969_P3.htm
[5] https://800notes.com/Phone.aspx/1-910-216-2530
[6] *Id.*
[7] *Id.*
[8] https://findwhocallsyou.com/9102162530
[9] *Id.*
[10] https://800notes.com/Phone.aspx/1-660-460-4033
[11] https://findwhocallsyou.com/6604604033?CallerInfo#Done

23.     North Star Insurance sent these calls despite the fact that they have previously been sued for this same conduct. *See Woods v. North Star Insurance Advisors, LLC*, Civil Action No. 21-cv-687 (E.D. Mo.).

24.     The Plaintiff received at least one such call on his residential telephone line, 412-XXX-0871.

25.     That number is not associated with a business and is used for personal purposes.

26.     The Plaintiff received a pre-recorded call from the Defendant on May 24, 2022.

27.     The pre-recorded message said, "Hi. This is Mary from American Senior Citizen Care."

28.     The message that the call delivered was clearly pre-recorded because (a) there was a delay after the Plaintiff answered the line (b) a "click" to play the pre-recorded message was heard by the Plaintiff prior to the pre-recorded message (c) the pre-recorded message was monotone, non-personalized and generic (d) the Plaintiff received other telemarketing calls that delivered the identical pre-recorded message.

29.     After the pre-recorded message, the Plaintiff spoke with a live individual named "Mary".

30.     "Mary" told the Plaintiff that she was with "Senior Benefits", a name that the Defendant uses as part of its telemarketing.

31.     Mary asked the Plaintiff a series of medical history questions to determine his eligibility for the insurance that the Defendant promotes.

32.     Then "Mary", transferred the Plaintiff to Chad Racine, an employee of the Defendant.

33.     "Mary" introduced the Plaintiff to Chad, and "Mary" gave Chad her pre-qualifier identification number as 371.

34.     Like "Mary", Chad told the Plaintiff that the name of his company was "Senior Benefits".

35.     Chad informed the Plaintiff that he was licensed to sell insurance in Pennsylvania under the license number 819061.

36.     Chad asked the Plaintiff a series of medical history questions to determine his eligibility for the insurance that the Defendant promotes.

37.     After asking the Plaintiff questions, Chad informed the Plaintiff that he found a plan for the Plaintiff that he called the North Star Legacy Whole Life Insurance Policy through Occidental Life Insurance Company.

38.     Occidental Life Insurance is an insurance company whose services the Defendant promotes.

39.     The pre-recorded call was intended to sell a North Star Legacy Whole Life Insurance Policy, which is insurance offered by the Defendant.

40.     The insurance policy promoted to the Plaintiff offered $10,000 worth of coverage in exchange for a premium to the Defendant of $80.26 a month.

41.     The plaintiff received other similar pre-recorded calls in May of 2022.

42.     Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded.

43.     Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class.

## Class Action Statement Pursuant to LCvR 23

44.     Plaintiff brings this action on behalf of himself and the following Class (the "Class") pursuant to Federal Rule of Civil Procedure 23.

45.     Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> **Robocall Class:** All persons within the United States: (1) to whose residential telephone line (2) Defendant (or an agent acting on behalf of Defendant) placed a telemarketing call (3) from four years prior to the filing of the case through the date of class certification (4) using an identical or substantially similar pre-recorded message used to place telephone calls to Plaintiff.

46.     Plaintiff is a member of this class and will fairly and adequately represent and protect the interests of this class as he has no interests that conflict with any of the class members.

47.     Excluded from the Class are counsel, the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

48.     Plaintiff and all members of the Class have been harmed by the acts of the Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

49.     This Class Action Complaint seeks injunctive relief and money damages.

50.     The Class as defined above are identifiable through the Defendant's dialer records, other phone records, and phone number databases.

51.     Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds in each class.

52.     The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

53.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

54.     There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

55.     There are numerous questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

(a) Whether the Defendant used pre-recorded message to send telemarketing calls;

(b) whether Defendant made calls to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls;

(c) whether Defendant's conduct constitutes a violation of the TCPA; and

(d) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

56.     Further, Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has no interests which are antagonistic to any member of the Class.

57.     Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class, and have the financial resources to do so.

58.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

59.     The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

60.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## FIRST CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act
47 U.S.C. 227(b) on behalf of the Robocall Class**

61.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

62.     The foregoing acts and omissions of Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the residential telephone numbers of Plaintiff and members of the Class delivering pre-recorded messages.

63.     As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their residential telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

64.     If the Defendant's conduct is found to be knowing or willful, the Plaintiff and members of the Class are entitled to an award of up to treble damages.

65.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any residential telephone numbers using an artificial or prerecorded voice in the future.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.     Injunctive relief prohibiting Defendant from calling residential telephone numbers advertising their goods or services, except for emergency purposes, using a pre-record message in the future;

B.     That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

C.     An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

D.     Such other relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff requests a jury trial as to all claims of the complaint so triable.


Plaintiff,
By Counsel,

By: */s/ Jeremy C. Jackson*
Jeremy C. Jackson (PA Bar No. 321557)
BOWER LAW ASSOCIATES, PLLC
403 S. Allen St., Suite 210
State College, PA 16801
Tel.: 814-234-2626
jjackson@bower-law.com

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(617) 485-0018
anthony@paronichlaw.com
*Subject to Pro Hac Vice*