IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEWART ABRAMSON, individually and on behalf of a class of all persons and entities similarly situated,<br><br>  Plaintiff<br><br>vs.<br><br>NORTH STAR INSURANCE ADVISORS LLC, TORCHLIGHT TECHNOLOGY GROUP LLC and RAPID RESPONSE MARKETING LLC<br><br>  Defendants. | Case No. 2:22-cv-827 |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS AND MEMORANDUM IN SUPPORT**

## I.  INTRODUCTION

Plaintiff Stewart Abramson ("Plaintiff") and Defendants Rapid Response Marketing LLC, North Star Insurance Advisors LLC and Torchlight Technology Group, LLC ("Defendants") (the Plaintiff and Defendants collectively referred to herein as the "Parties") have negotiated, and the Court preliminarily approved a class action settlement of this Telephone Consumer Protection Act ("TCPA") case on January 25, 2024. (Doc. 97.)  A copy of the Settlement is on file with the Court.  (Doc. 93-1.)  The Settlement requires the establishment of a $375,000 Settlement Fund to be distributed *pro rata* to Settlement Class Members who are Authorized Claimants after payment of notice and Administration Costs (if approved), a Fees,

- 1 -

Costs, and Expenses Award to Settlement Class Counsel (if approved), and Service Payment to the Plaintiff (if approved).[1]  There is no reverter in the Settlement Fund.  Settlement Class Members who are Authorized Claimants will each receive a sizeable cash payment from this fund of $1,102.00. (*See* Declaration of Scott Fenwick ¶20 ("Kroll Decl."), attached hereto as Exhibit 1.)  This per claim payment amount far exceeds other TCPA class action settlements approved by courts in this Circuit and elsewhere.

The Parties' Settlement Agreement is now subject to final approval by the Court.  In accordance with the Court's Preliminary Approval Order, CAFA Notice Packets were mailed via Priority Mail to the U.S. Attorney General, the Attorneys General and the Commissioners of Public Utilities of each of the 50 states, the District of Columbia, and U.S. Territories, a Postcard Notice was sent via first class mail to identified Settlement Class Members.  (*See* Kroll Decl. ¶5-13.)  Notably, there were *no exclusion requests or objections* to the settlement.  (*Id.* ¶ 22.)

The Settlement Agreement reflects a compromise of the Parties' positions for the purpose of resolving, without further litigation, all issues and claims relating to the allegations made in this Action on behalf of all members of the Settlement Class.  As demonstrated below, the Settlement negotiated by the Parties is fair, adequate, and reasonable and provides a substantial benefit to the Settlement Class.

The Parties request that the proposed order attached hereto as Exhibit 2, and filed with the Court previously, be entered.  The order will fully dispose of this matter.

---

[1] All capitalized terms not defined herein have the meanings set forth in the Parties' Settlement Agreement and Release ("Settlement" or "Agreement"), filed at Doc. 93-1.

## II.     NATURE AND BACKGROUND OF THE CASE

This case rests on alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, which prohibits, *inter alia*, initiating any telephone solicitation using an artificial or prerecorded voice. *See* 47 U.S.C. § 227(b). The TCPA provides a private cause of action to persons who receive such calls. *Id.* and 47 U.S.C. § 227(b)(3).

Plaintiff is a Pennsylvania resident whose telephone numbers have been called with recorded messages for years. On June 7, 2022, plaintiff Stewart Abramson filed a putative class action complaint in the United States District Court for the Western District of Pennsylvania against North Star Insurance Advisors LLC, Case No. 22-cv-827 (the "Action"). Later, after it was determined that North Star had not initiated the telephone calls that are the subject of the Action, the Action was amended to include Torchlight Technology Group LLC and Rapid Response Marketing LLC. The operative Complaint alleged that Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 by, *inter alia*, Rapid Response Marketing LLC placing unsolicited telemarketing calls to Plaintiff and members of the putative class using a prerecorded voice, or by the fact that such actions were done on its behalf.

The parties mediated this case with Bruce Friedman at JAMS. While that mediation was unsuccessful, it eventually culminated in the Settlement Agreement before this Court.

## III.     THE PROPOSED SETTLEMENT

### A.     THE SETTLEMENT CLASS

Pursuant to the Settlement Agreement, Plaintiff seeks certification of the following Settlement Class for settlement purposes only:

> All persons within the United States: (1) who were users and subscribers of telephone number(s) to which (2) SBM Communications placed a telemarketing call (3) on behalf of Rapid Response, (4) from June 7, 2018 through May 3, 2023 (5) as part of the final expense insurance campaign (6) that Rapid Response

produced in this case as part of the file "DSC. SBM Call Transfers to Torchlight".

(Agreement ¶ 1.27). The proposed Settlement encompasses 434 individuals who received calls from SBM Communications.

**B.   SETTLEMENT RELIEF**

**1.   Class Member Relief: Settlement Fund**

The proposed Settlement establishes a non-reversionary $375,000.00 Settlement Fund, which will exclusively be used to pay: (1) cash settlement awards to Settlement Class Members; (2) Settlement Administration Expenses; (3) attorney's fees of one-third of the total amount of the Settlement Fund ($125,000.00) in addition to out of pocket expenses (up to $20,000.00), subject to Court approval; and (4) a court-approved Service Award to the Class Representative of up to $10,000. Each Settlement Class Member who submits a valid claim shall be entitled to receive an equal *pro rata* amount of the Settlement Fund after all settlement administrative expenses, Service Awards, and fee awards are paid out of the Settlement Fund. If all the attorneys' fees, expenses, Service Award and settlement administration expenses are approved as requested, the Settlement Administrator has projected that each claimant receive a sizeable cash payment from this fund of $1,102.00. *See* Declaration of Scott Fenwick ¶20.

**2.   Class Representative Service Payment**

If approved by the Court, Plaintiff will receive a one-time Service Payment of $10,000 from the Settlement Fund.  As discussed in Plaintiff's Motion for Award of Attorneys' Fees, Costs, Expenses, and Class Representative Award, contemporaneously filed herewith, this award will compensate the Plaintiff for their time and effort and for the risk undertook in prosecuting this case as well as participating in discovery.

**3.   Attorneys' Fees and Costs**

Settlement Class Counsel has filed a motion for an award of attorneys' fees in the amount of one-third of the total amount of the Settlement Fund ($125,000) and out of pocket costs and expenses of $14,500. The requested award of attorneys' fees, costs, and expenses will compensate Settlement Class Counsel for the work already performed in relation to the settled claims, as well as the remaining work to be performed in documenting the settlement, securing Court approval of the settlement, making sure the settlement is fairly implemented, and obtaining dismissal of the Action.

### 4. Remaining Funds

Any amount remaining in the Settlement Fund after paying all approved Claim Forms, Settlement Administration Expenses, and any Fee Award and Service Award will be distributed to a Court-approved *cy pres* recipient. The Parties propose the Legal Services Corporation as an appropriate recipient. (Agreement. ¶1(9)). However, it is important to note that the only *cy pres* payment will be made for uncashed checks which are no longer economically viable to distribute to Authorized Claimants.

### C. NOTICE AND SETTLEMENT ADMINISTRATION

The Settlement Administrator, Kroll Settlement Administration, LLC ("Kroll") was engaged to perform the following services : (a) preparing and sending notices in connection with the Class Action Fairness Act; (b) receiving and analyzing the Class List from Defendants' Counsel; (c) creating a Settlement Website with online Claim filing capabilities; (d) establishing a toll-free telephone number; (e) establishing a post office box for the receipt of mail; (f) preparing and sending the Postcard Notice via first-class mail; (g) establishing an email address to receive Settlement Class Member inquiries; (h) receiving and processing mail from the United States Postal Service ("USPS") with forwarding addresses; (i) receiving and processing

undeliverable mail, without a forwarding address, from the USPS; (j) receiving and processing Claim Forms; (k) receiving and processing requests for exclusion and objections. (Kroll Decl. ¶ 3.)  The Settlement Administrator's records reflect that Postcard Notices likely reached 421 of the 434 persons to whom Postcard Notices were mailed, which equates to a reach rate of the direct mail notice of approximately 97%. This reach rate is consistent with other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches[2] over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign.[3] (*Id*. at ¶ 13.)  Subject to this Court's approval, Administration Costs, which are set forth in in the attached Declaration from the Settlement Administrator, will be paid from the Settlement Fund.

D.     OPT-OUTS AND OBJECTIONS

Settlement Class Members were given the opportunity to opt out of or object to approval in accordance with the Settlement Agreement.  (*Id.* ¶ 21.)  However, no Settlement Class Member opted our or objected to any aspect of the Settlement. (*Id.* at ¶ 22.).

E.     RELEASE

The release is appropriately tailored to this case involving alleged violations like those alleged and is limited to those Settlement Class Members identified in the Class, which is compiled of data exchanged in discovery. In exchange for settlement benefits, the Settlement Class Members who do not timely opt out of the Settlement will release Defendants from any

---

[2] FED. JUD. CTR., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. The guide suggests that the minimum threshold for adequate notice is 70%.

[3] Barbara Rothstein and Thomas Willging, Federal Judicial Center Managing Class Action Litigation:  A Pocket Guide for Judges, at 27 (3d Ed. 2010).

and all claims against the Settling Defendant. The Release is limited to claims arising from telemarketing calls that generated leads for the Defendants and is further limited only to the individuals contained on the Class List. (Agreement. ¶2).

## IV.     ARGUMENT

### A.     THE SETTLEMENT APPROVAL PROCESS

A court may approve a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing."  MANUAL FOR COMPLEX LITIGATION (SECOND) § 30.44 (1985).

The amendments to Rule 23(e)(2) that went into effect in December 2018 provide additional guidance, requiring courts consider whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided by the settlement is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief including the method of processing class-member claims, if required, (iii) the terms of any proposed award of attorneys' fees, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3) made in connection with the proposed settlement; and (D) the proposal treats class members equitably relative to each other.  Plaintiff will address these factors as applicable, many of which overlap.  There is no governmental participant, and no agreement required to be identified under Rule 23(e)(3).

In addition, the Third Circuit has a strong judicial policy that encourages class settlements, especially those that are the product of arm's length negotiations. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 510 (D.N.J. 1997), *aff'd sub nom. Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283, 317 (3d Cir. 1998); *see also In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 299 (3d Cir. 2005) ("all Federal Circuits recognize the utility of … 'settlement classes' as a means to facilitate the settlement of complex nationwide class actions") (quotation and citation omitted).

**B.     THE CRITERIA FOR FINAL APPROVAL ARE SATISFIED**

The Third Circuit has adopted a nine-factor test to determine whether a settlement is "fair, reasonable, and adequate" and should be finally approved. The elements of this test—known as the "*Girsh* factors"—are:

> (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) (citing *Girsh*, 521 F.2d at 157).

As summarized below, these factors, as well as the factors contained in Rule 23(e)(2), demonstrate that this settlement should be finally approved.

**1.     Complexity, Expense, and Likely Duration of the Litigation**

The first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001) (internal citation and quotation marks omitted). "By measuring the costs of continuing on the adversarial path, a court

can gauge the benefit of settling the claim amicably." *GMC*, 55 F.3d at 812. This factor undoubtedly weighs in favor of the Settlement here. In this litigation, the path from this point to a final judgment would be long and expensive. After discovery was completed, the Parties would have had to brief class certification, and the Court would have been forced to decide the strongly contested issue of whether a basis exists to certify a class for the purpose of establishing liability. If the Court determined that certification was warranted, then the Defendants presumably would have immediately exercised its right to seek interlocutory review of that certification order. If the certification order was upheld, additional discovery would have been taken (with attendant discovery-related motion practice). Thereafter, dispositive motions would have been filed by one or both of the Parties, and the Court would have been forced to adjudicate those motions, with additional appellate practice if such dispositive motions resulted in either entry of final judgment or a basis for interlocutory review. Depending on how the Third Circuit resolved any such appeals, the case might ultimately have gone to trial. Post-trial motions and additional appeals would have likely followed.

In fact, one of Class Counsel was involved in one of the only TCPA class actions to go through trial, and the amount of work done after class certification and through trial that would have resulted here is indicated in the work done in that case. *See Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333 (M.D.N.C. 2017) (more than 45 motions after a class certification decision through the time of trial). That case remained on appeal several years after the initial trial was completed. In short, litigating this Action would have proved lengthy, complex, and expensive, thereby delaying (and potentially dissipating) any benefits that might have been obtainable by Settlement Class Members. The proposed Settlement Agreement permits the

Court and the Parties to avoid this significant expenditure of time and resources. This factor strongly favors preliminary approval of the proposed settlement.

### 2. The Reaction of the Settlement Class to the Settlement

The second *Girsh* factor "attempts to gauge whether members of the class support the settlement." *Prudential*, 148 F.3d at 318. Here, *no Settlement Class Member* has objected to any aspect of the settlement or otherwise requested to be excluded. *See In re AT&T Corp. Sec. Litig.*, 455 F.3d 160 (3d Cir. 2006) (district court did not abuse discretion in finding that second factor weighed strongly in favor of approval where there were eight objections out of one million potential class members); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 305 (3d Cir. 2005) (noting that a similarly low level of objection is a "rare phenomenon"). The positive response of the Settlement Class weighs in favor of approval.

### 3. The Stage of Proceedings and the Amount of Discovery Completed

The third *Girsh* factor "captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *See GMC,* 55 F.3d at 813.

This inquiry has two aspects: legal and factual. *Prudential*, 148 F.3d at 319. The first aspect is easily satisfied in this case, where the Parties engaged in extensive negotiations and related legal analysis with the help of an experienced and sophisticated mediator in Bruce Friedman of JAMS who has helped resolve numerous TCPA class actions. As a result, Settlement Class Counsel has a more than adequate appreciation of the legal merits of the case. The same is true from a factual perspective, which involves "an inquiry into the type and amount of discovery the parties have undertaken." *Id.* Here, Settlement Class Counsel reviewed and analyzed separate document productions representing thousands of pages of documents from various defendants and third parties and took the depositions of Rapid Response Marketing.

Settlement Class Counsel has a thorough appreciation of the facts—good and bad—which bear upon the merits of the claims in this litigation. In view of the foregoing, this factor strongly favors approval of the proposed settlement.

### 4. The Risks of Establishing Liability and Damages

As to the fourth *Girsh* factor, as well as factor (C)(i) of Rule 23(3)(2) ("the costs, risks, and delay of trial and appeal"): "[b]y evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *GMC*, 55 F.3d at 814. "The risks surrounding a trial on the merits are always considerable." *Weiss v. Mercedes-Benz of N. Am.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995); *see also, e.g., West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ("[N]o matter how confident one may be of the outcome of litigation, such confidence is often misplaced."). As to the risks of establishing damages: "Like the fourth factor, this inquiry attempts to measure the expected value of litigating the action rather than settling it at the current time." *Cendant*, 264 F.3d at 238-39 (internal citation and quotation marks omitted).

While Defendants have agreed to settle, they were not without significant defenses. Class certification is far from automatic in TCPA cases. *Compare Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 WL 4627386, at *1 (N.D. Ill. Sept. 27, 2018) (denying class certification in TCPA case after nearly five years of hard-fought discovery and litigation); *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action) and *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (same), with *Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding no evidence supported the view

that issues of consent would be individualized) and *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).

Even if the class were certified, the Plaintiff would still have a substantial obstacle regarding Defendants' vicarious liability for the conduct of their vendors and/or publishers, or their insurance agents. The Supreme Court in *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 193 L. Ed. 2d 571 (2016), held traditional agency and vicarious liability principles are required in order to be found liable under the TCPA. However, Defendants North Star and Torchlight did not have contractual privity with the entity that physically initiated the calls, which would make such a finding more difficult. *See e.g. Cunningham v. Capital Advance Sols., LLC*, Civil Action No. 17-13050 (FLW), 2018 U.S. Dist. LEXIS 197590 (D.N.J. Nov. 20, 2018). In fact, other district courts in the Third Circuit have entered summary judgment in favor of TCPA defendants in such a situation. *See Klein v. Just Energy Grp., Inc.,* Civil Action No. 14-1050, 2016 U.S. Dist. LEXIS 84447, at *43 (W.D. Pa. June 29, 2016) ("In sum, the evidence adduced in this case is not sufficient to support a finding by a reasonable jury that Collectcents was acting as an agent (whether under actual authority, apparent authority or ratification theories) for any of the Just Energy Defendants in making any of the calls.")

In addition, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards — even after a plaintiff has prevailed on the merits — on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights…. Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see*

*Phillips Randolph Enters., LLC v. Rice Fields*, No. 06-4968, 2007 WL 129052, at *3 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

While Plaintiff was confident he would ultimately prevail, this Action would continue to be heavily litigated by experienced class action counsel on behalf of Defendants. As with any litigation, there are risks inherent in continuing to litigate, but considering that Plaintiff were able to obtain by settlement much of the relief sought in the litigation, it is in the Settlement Class's best interest to accept the relief provided in the Settlement Agreement now rather than to spend hundreds of thousands of dollars in fees and years of time in an attempt to obtain a marginally better result through litigation.

### 5. Risks of Maintaining Class Action Status Through Trial

Because "the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the class action," *GMC*, 55 F.3d at 817, the court must measure the likelihood of obtaining and maintaining a certified class if the action were to proceed to trial. *Girsh*, 521 F.2d at 157. While for the reasons stated above, Plaintiff firmly believes that this case is appropriate for class action treatment, regardless of any settlement, it is undeniable that class certification for settlement purposes removes some of the hurdles upon which some courts have denied certification of a litigation class. For example, manageability is not a concern with settlement classes. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

What is certain is that any decision granting certification absent settlement would be subjected to the cost, delay, and the uncertainty of a Rule 23(f) appellate challenge, before the class could proceed to trial, and an appeal from any verdict or judgment in favor of the class would likewise follow. If a class could not be certified here, it would leave few, if any, class

members with both the resources and financial incentive to chase a maximum $500 award for each alleged statutory violation on their own, with the practical result of no recovery by anyone. *See Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 661 (7th Cir. 2004) ("The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.") (emphasis in original).  The proposed Settlement Agreement provides a remedy now to all Settlement Class Members, rather than risking an uncertain result after years of expensive litigation.

      **6.**    **Ability to Withstand a Greater Judgment**

The sixth *Girsh* factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement." *Cendant*, 264 F.3d at 240.  This factor is particularly relevant here.

In a TCPA case such as this, the potential damages could bankrupt Defendants.  Unlike a large public company with extensive financial resources, the Defendants are small companies with finite resources.  As one court acknowledged in approving a TCPA settlement:

> Individual class members receive less than the maximum value of their TCPA claims, but they receive a payout without having suffered anything beyond a few unwanted calls or texts, they receive it (reasonably) quickly, and they receive it without the time, expense, and uncertainty of litigation.... *[C]omplete victory for Plaintiff at $500 or $1,500 per class member could bankrupt [the defendant].... [The] recovery in the hand is better than a $500 or $1,500 recovery that must be chased through the bankruptcy courts.*

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) (emphasis added); *see also Reinhart v. Lucent Tech.*, 327 F. Supp. 2d 426, 438 (D.N.J. 2004) ("[T]he risk of nonpayment is 'acute' where a defendant lacks 'significant unencumbered hard assets against which Plaintiff could levy had a judgment been obtained.'") (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000)).

7. **The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation**

The last two *Girsh* factors are usually considered together. They ask "whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *Prudential*, 148 F.3d at 322. As Judge Becker explained in *GMC*, "[t]he evaluating court must ... guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." 55 F.3d at 806. These factors overlap with Rule 23(e)(2)(C) (relief provided by the settlement is adequate, taking into account risks, distribution method, and attorneys' fees).

As explained above, the settlement amount here is reasonable relative to the claims asserted and the risks inherent in bringing those claims to a successful judgment after trial. The settlement amount and minimum per claimant payment of approximately $1,100 is well above other TCPA settlements approved across the country. The following provides a summary overview of a sampling of per claimant recoveries in similar TCPA cases around the country that establishes the result achieved in this case is not just reasonable but exemplary when compared to outcomes negotiated in other class settlements:

| Case Name | Claimant Amount |
| --- | --- |
| *Schely v. Verde Energy USA, Inc.,* No. 2:17-cv-00887-WB (E.D. Pa. May 19, 2020) | $100.00 cash |
| *Amanda Hopkins v. Modernize Inc.,* No. 4:17-cv-40087-TSH (D. Ma. Oct. 9, 2019) | $26.00 cash |
| *Marengo v. Miami Resch. Assocs., LLC*, No. 1:17-cv-20459-KMW (S.D. Fla. July 20, 2018) | $130.00 cash |
| *Vasco v. Power Home Remodeling Group LLC*, No. 15-cv-4623, 2016 U.S. Dist. LEXIS 141044 (E.D. Pa. Oct. 12, 2016) | $27.00 cash |
| *Kolinek v. Walgreen Co.*, No. 13-cv-4806, 2015 WL 7450759, at *7 (N.D. Ill. Nov. 23, 2015) | $30.00 cash |
| *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) | $39.66 cash |

| Case Name | Claimant Amount |
|---|---|
| *Rose v. Bank of Am. Corp.*, No. 11-cv-02390- EJD, 2014 U.S. Dist. LEXIS 121641, at *30 (N.D. Cal. Aug. 29, 2014) | $40.00 cash |
| *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, 2014 WL 1309352, at *6 (N.D. Cal. Mar. 10, 2014) | $46.98 cash |
| *Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) | $24.00 cash |
| *Manoucherhi v. Styles for Less, Inc.,* Case No. 14cv2521 NLS, 2016 WL 3387473, at *2, 5 (S.D. Cal. June 20, 2016) | $10.00 cash (or $15.00 voucher) |
| *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 3:11-md-02261 (S.D. Cal. Feb. 20, 2013) | $12.97 cash (or $17.29 voucher) |
| *Estrada v. iYogi, Inc.*, No. 2:13-01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) | $40.00 cash |
| *Cubbage v. Talbots, Inc.*, No. 09-cv-00911-BHS (W.D. Wash. Nov. 5, 2012) | $40.00 cash (or $80.00 voucher) |
| *Wijesinha v. Susan B. Anthony List, Inc.*, No. 1:18-cv-22880-JEM (S.D. Fla. 2019) | $5.00 cash |
| *Satterfield v. Simon & Schuster, Inc., et al.,* No. 06-cv-2893 (N.D. Cal. 2010) | $175.00 cash |
| *Goldschmidt v. Rack Room Shoes, Inc.,* No. 1:18-cv-21220-KMW (S.D. Fla. 2019) | $5.00 cash (and $10.00 voucher) |
| *Poirier v. CubaMaxTravel, Inc.,* No. 1:18-cv-23240-CMA (S.D. Fla. 2018) | $7.00 cash |
| *Weinstein v. The Timberland Co.,* No. 06-cv-00484 (N.D. Ill. 2008) | $150 cash |
| *Mohamed v. Off Lease Only, Inc.,* No. 1:15-cv-23352-MGC (S.D. Fla. 2019) | $50.00 cash |

And the proposed method of distributing relief and processing claims is effective and equitable. Fed. R. Civ. P. 23(e)(2)(C). To participate in the settlement, Settlement Class Members had to submit simple claim forms. Payments to Authorized Claimants will be sent after final approval, and all Authorized Claimants will receive an equal amount. *See* Fed. R. Civ. P. 23(e)(2)(D) ("the proposal treats class members equitably relative to each other").

The terms of the proposed attorneys' fees were disclosed in the Notices and are well in line with fees in other cases.

### 8. The Class Representative and Settlement Class Counsel Have Adequately Represented the Settlement Class

Rule 23(e)(2)(A) requires the Court to consider whether the Plaintiff and Settlement Class Counsel have adequately represented the Settlement Class.  For the reasons stated in the Plaintiff's memorandum in support of preliminary approval, Doc. 93 at pp. 9-10, this requirement is satisfied.  Plaintiff's interests are aligned with those of the Settlement Class, and they have served the Settlement Class's interests in this litigation and in obtaining this settlement.  And Settlement Class Counsel is an experienced TCPA litigator.  (Class Counsel Decl., Doc. 93-2.)

### 9. The Proposal Was Negotiated at Arm's Length

Rule 23(e)(2)(B) instructs the Court to consider whether the proposed settlement was negotiated at arm's length.

Here, the Parties reached the settlement through formal mediation sessions with a highly respected, independent mediator, the Bruce Friedman of JAMS.  Prior to their sessions, the Parties prepared memoranda and exchanged information relevant to settlement negotiations.  The negotiations were substantive and included extensive discussions about the merits of Plaintiff's legal claims and Defendants' defenses.

The prolonged, hard-fought, and arm's length negotiations between experienced attorneys for both sides and the result for the Settlement Class are all testaments to the non-collusive nature of the settlement.  And "the participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *In re ViroPharma Inc. Secs. Litig.*, No. 12-cv-2714, 2016 U.S. Dist. LEXIS 8626, at *24 (E.D. Pa. Jan. 25, 2016) (citation omitted).

The "arm's-length negotiation" factor of Rule 23(e)(2)(B) weighs in favor of approval.

## C.    SETTLEMENT CLASS MEMBERS WERE SENT PROPER NOTICE

The threshold requirement concerning class notice is whether the means employed to distribute the notice was reasonably calculated to apprise the class of the pendency of the action, of the proposed settlement, and of the class members' right to opt out or object. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 159, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).  The notice process that was successfully implemented in this case more than satisfied all requirements.  As previously approved by the Court, the Parties implemented a Notice Plan including Postcard Notice and publication of a Long-Form Notice on the Settlement Website, which the Postcard Notice also directs Settlement Class Members to. The language of the Postcard Notice, Long-Form Notice was negotiated and agreed to by the Parties and approved by the Court prior to being disseminated.  The proposed notices were written in simple terminology and included: (1) a description of the Settlement Class; (2) a description of the claims asserted in the Action; (3) a description of the Settlement Agreement; (4) the deadlines for filing a Claim Form and/or for exercising the right to opt out (including limitation on the opt-out right); (5) the names of counsel for the Settlement Class; (6) the fairness hearing date; (7) an explanation of eligibility for appearing at the fairness hearing; and (9) the deadline for filing objections to the settlement.  (Kroll Decl. Exs. C-E.)

The Settlement Administrator utilized a set of reliable and robust databases to initially compile addresses to provide Postcard Notice to as many Settlement Class Members as possible. (Kroll Decl. ¶ 5.)

Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement.  Fed. R. Civ. P. 23(e)(1); *see also* MANUAL FOR COMPLEX LITIGATION, *supra*, at § 21.312.  The best practicable notice is that which

is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 704 (7th Cir. 2014), citing *United States Air Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010).

The Notice that was previously preliminarily approved by this Court and disseminated to the Settlement Class satisfies these criteria. The Notice is clear, straightforward, and provides persons in the Settlement Class with enough information to evaluate whether to participate in the Settlement. The Notice Plan constituted the best notice practicable under the circumstances, provided due and sufficient notice to the Settlement Class, and fully satisfied the requirements of due process and Federal Rule of Civil Procedure 23.

### D. CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

The Settlement Class meets all of the requirements for certification under Rule 23. There are no significant factual or legal differences among Settlement Class Members—all were allegedly subject to illegal telemarketing, and all are subject to the protections of the TCPA. For the reasons set forth more fully in the motion for preliminary approval (Doc. 93), which have not changed, all of the Rule's requirements are met in the Settlement Class. Plaintiff therefore request that the Court finally certify the Settlement Class for settlement purposes.

### V. CONCLUSION

The proposed class action settlement is fair, reasonable, adequate, and well within the permissible range of possible judicial approval. It should, therefore, be approved in all respects.

Respectfully submitted,

*/s/ Anthony I. Paronich*
Anthony I. Paronich (admitted *pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

*Attorneys for Plaintiff and the Proposed Settlement Class*

Dated: May 30, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record.

*s/ Anthony I. Paronich*